**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| KIM BURTON and WILLIAM ELLIS, on behalf of themselves and those similarly situated in Missouri, | |
| Plaintiffs, | |
| v. | Case No.: |
| APPLE INC., | **CLASS ACTION** |
| Serve: CT Corporation System | |
| 120 South Central Ave. | **JURY TRIAL DEMAND** |
| St. Louis, MO 63105 | |
| Defendant. | |

## COMPLAINT

COME NOW Plaintiffs Kim Burton and William Ellis, by and through their undersigned counsel, for their claims against Defendant Apple Inc. ("Apple") on behalf of themselves and those similarly situated in Missouri, and state as follows:

### Parties, Jurisdiction, and Venue

1.      Plaintiff Kim Burton is a citizen and resident of Columbia, Boone County, Missouri.

2.      Plaintiff William Ellis is a citizen and resident of Columbia, Boone County, Missouri.

3.      Plaintiffs assert a class action on behalf of owners of the iPhone 5, iPhone 5s, iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus, iPhone 7, iPhone 7 Plus  as well as those versions of the iPad (including the iPad Mini 2) whose devices were harmed by Apple's updating of their devices' software to iOS 10.2.1, 10.3, 10.3.1, 10.3.3 (the "iOS 10

Update") and to iOS 11, 11.0.1, 11.02, 11.03, 11.1.1, 11.1.2, 11.2, and 11.2.1 (the "iOS 11 Update," and collectively, the "iOS 10 and iOS 11 Updates")—those updates were released between January 23, 2017 and December 13, 2017 (collectively, the "Affected iPhones and iPads" or "Affected Devices").

4. Defendant Apple Inc. is a California corporation, headquartered in Cupertino, California that routinely conducts business in Missouri. Defendant sells its iPhones and iPads in its own retail stores located throughout the country, online, and also through third parties, such as AT&T. Defendant engineers and licenses to iPhone and iPad users iOS software, the only operating system Apple permits on its devices.

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the proposed Classes consists of more than 100 members, the amount in controversy exceeds $5 million, exclusive of interest and costs, and both Plaintiffs and Apple are diverse parties. The Court also has personal jurisdiction over Apple because Plaintiffs' claims arise out of Defendant's contacts with the State of Missouri.

6. At all relevant times, Defendant conducted substantial business in the State of Missouri as well as within the Western District of Missouri.

7. Venue is proper in the Central Division of the Western District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this Division of the District, and/or a substantial part of property that is the subject of the action is situated in this Division of the District.

8. Apple has intentionally availed itself of the laws and markets Missouri, does substantial business in this District and is subject to personal jurisdiction in this District.

9.     The Court also has personal jurisdiction over the Parties because Defendant conducts a major part of its national operations with regular and continuous business activity in Missouri.

**Factual Background**

10.     The iPhone is an internet and multimedia-enabled "smartphone" designed and marketed by Apple. Apple introduced the original iPhone for sale in the United States in or about June 2007. Since then, Apple has introduced a succession of new models of the iPhone, including the Affected iPhones.

11.     The iPad is an internet and multimedia-enabled tablet computer designed and marketed by Apple. Apple introduced the original iPad for sale in the United States in or about April 2010. Since then, as with the iPhone, Apple has introduced a succession of new models of the iPad, including the Affected iPads.

12.     Apple generates the majority of its sales from the iPhone. And the iPhone's importance to Apple's business has been recognized in the media where it has been stated that Apple's "success is derived from selling brand-new high-end smartphones consistently month after month." *See* Statt, N., "Why Apple and other tech companies are fighting to keep devices hard to repair," The Verge (Aug. 3, 2017) (available online at www.theverge.com/2017/8/3/16087628/apple-e-waste-environmental-standards-ieee-right-to-repair).

13.     Apple represented that its recent iOS 10 and iOS 11 software updates to the Affected iPhones and iPads would improve those devices' performance and it strongly encouraged its customers to accept those updates. But Apple did not tell its customers that it had intentionally designed those software updates to slow the devices' processing speed

to address an issue with the phones' battery. Apple admitted its intentional and surreptitious action only this month under public pressure, admitting its software updates slowed processor speed. Now Plaintiffs and Class Members must either purchase new batteries for their devices, replace their devices for hundreds, if not thousands, of dollars or continue to struggle with their slowed devices.

14.     Although Plaintiff Kim Burton was reasonable in her use of both her Affected iPhone (an iPhone 5s) and her Affected iPad (an iPad Mini 2) since she purchased them, they would both shut down suddenly and/or experience precipitous declines in their battery levels. And, in addition to other performance problems, Plaintiff Kim Burton began to observe that both her Affected iPhone and iPad had begun to operate in an extremely sluggish manner.

15.     Plaintiff William Ellis also was reasonable in his use of his Affected iPhone (an iPhone 7) since he purchased it but began to experience performance problems with the phone, including that it began to operate sluggishly, as well as diminished battery life.

16.     Plaintiff Burton installed iOS 10.2.1 on her Affected Devices, and as a result, the performance of the devices deteriorated substantially. Apps take unduly long to open, update, and respond to inputs such as swiping and scrolling lag. Websites are prone to crashing and take too long to load. The battery of these devices quickly depletes and the devices report having low battery and shutting down much more quickly than when they were initially purchased and running operating earlier operating systems. Upon information and belief, Plaintiff had not experienced such deterioration until installing the update. The performance of Plaintiff's Affected Devices has not improved with subsequent software installations.

17.     Plaintiffs are informed and believe that Apple was aware of a defect in their Affected iPhones and iPads at the time they purchased them, and not only failed to disclose what it knew, but made deliberately misleading statements that were intended to conceal the nature and scope of that defect. Likewise, Apple was aware that the software updates it encouraged Plaintiffs to install on their Affected Devices would reduce the performance of the devices and, again, concealed that fact from Plaintiffs.

18.     In November 2016, following consumer complaints, a Chinese consumer association requested that Apple investigate "a considerable number" of reports by iPhone 6-series users that the devices were shutting off despite displaying high battery levels and in room temperature environments.

19.     Thereafter, Apple acknowledged that "a very small number of iPhone 6s devices may unexpectedly shut down" due to battery issues. It admitted, on its Chinese-language website only, that this problem had been caused by "a battery component's" unduly long exposure to "controlled ambient air" during manufacture between September and October 2015.

20.     Near the same time, in or about November 2016, Apple announced to its English-speaking audience that a "very small number" of Affected iPhones (specifically, the iPhone 6S and iPhone 6S Plus) were affected by a problem that caused those devices to shut down, suddenly and unexpectedly, "for no apparent reason." Plaintiff is informed and believes that, in actuality, Apple knew that the lithium-ion batteries that it installed in Affected iPhones were causing the devices to shut down unexpectedly, notwithstanding that their battery levels were at as much as 60 percent when the shut-down occurred.

21.    Despite claiming that the shutdowns were occurring for "no apparent reason," Apple also announced that it had initiated a battery-replacement program that was limited to the iPhone 6S and the iPhone 6S Plus, and that neither the shutdown problem nor the battery-replacement program would serve to extend the applicable warranty.

22.    Plaintiffs are informed and believes that Apple's announcement was misleading and that Apple knew it was misleading at the time it made the announcement in November 2016. Apple admitted publicly that a "small number of customers outside the affected range [(i.e., Affected iPhones other than the 6S and the 6S Plus)] have also reported a shutdown." *See* Roberts, J., "Why It's Time for Apple to Come Clean About the iPhone Battery," Fortune (Dec. 27, 2016) (available online at http://fortune.com/2016/12/27/apple-iphone-6-battery-problem/). Apple went on to claim, however, that "[s]ome of these shutdowns can occur under normal conditions for the iPhone to protect its electronics." *Id.*

23.    Plaintiff is informed and believes that these statements were deliberately misleading as well. In actuality, the lithium-ion batteries in all Affected iPhones cause them to operate erratically and to shut down the device unexpectedly due to the batteries' inability to handle the demand created by processor speeds (the "battery defect").

24.    Rather than curing the battery defect by providing a free battery replacement for all Affected iPhones and iPads, Apple sought to mask the battery defect by modifying the iPhone operating system ("iOS") so that it reduces Affected iPhones' processing speeds in an effort to prevent their batteries from causing erratic operation and unexpected shutdowns.

25.     Apple did not immediately disclose to consumers that it intended the iOS 10.2.1 update to fix the shutdown problem. It waited until February 2017 to disclose that the update had "made improvements to reduce occurrences of unexpected shutdowns."

26.     But modifying iOS not only allowed Apple to conceal the true nature and scope of the battery defect and to avoid expending time, money, and effort on correcting it, Apple's decision to modify iOS instead had an added benefit to Apple: the modified iOS would slow the performance of Affected iPhones, which would serve to compel consumers to replace them with new iPhones, or unknowingly suffer with partially disabled phones.

27.     Apple's limited battery replacement did not resolve the unexpected shutdown problem. iPhone 6 and iPhone 6s owners continued to suffer from unexpected shutdowns, including owners who purchased devices manufactured outside of September through October 2015.

28.     Defendant Apple released iOS updates to the Affected iPhones that slowed or throttled down the performance speeds of the processing units of these phones by linking each phone's processing performance with its battery health. These updates were released because other iOS updates were over-using or over-draining the batteries.

29.     Apple also released iOS updates to its other "i" products, including iPads, that similarly slowed or throttled down the performance speeds of the processing units of these phones by linking each phone's processing performance with its battery health. These updates were released because other iOS updates were over-using or over-draining the batteries.

30.     Apple slowed down the operating speeds of the Affected iPhones and iPads which caused users of these devices to experience significant slowdowns in device performance and speed.

31.     Apple's failure to inform or explain to its consumers and customers, including but not limited to Plaintiffs, that the slow-downs in the Affected iPhones and iPads performances and resulting lost or diminished performance could be remedied by replacing the batteries of these devices.

32.     Rather, Apple represented to Plaintiffs and similarly situated consumers and customers that the iOS updates were necessary for optimal usage and operation of the Affected iPhones, when they knew that it would slow or throttle down the speeds of the Affected iPhones and iPads. Indeed, Apple claimed that its current iOS 11 operating system "makes iPhone better than before" and that "[w]ith iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." (Available online at www.apple.com/ios/ios-11/).

33.     Apple had previously claimed that the iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better." (Available online at www.apple.com/newsroom/2016/06/apple-previews-ios-10-biggest-ios-release-ever/).

34.     Apple also stated that "in iOS 10, accessing the information you need is easier and quicker than ever"—even though Apple designed iOS 10.2.1 to slow processing speeds. *Id.*

35.     In addition to proclaiming the software updates' benefits, Apple also made it very difficult for its customers to avoid the iOS 10 Updates and iOS 11 Updates.

36.     The Affected iPhones repeatedly reminded Plaintiffs and class members to update their software until the owner agreed to accept the updates.

37.     Additionally, if Plaintiffs and class members did not update, applications for their devices would ultimately become unusable.

38.     John Poole, of Primate Labs, published the results of his research that connected Affected iPhone's slow CPU performance to battery capacity in certain iOS software versions. Poole found that the performance deterioration arose when iOS software version 10.2.1 (or later) was installed in the iPhone 6S. Poole also found performance deterioration arose when iOS software version 11.2 (or later) was installed in iPhone 7.

39.     iPhones are powered by lithium-ion batteries. By their nature, the capacity of lithium- ion batteries degrade over time.

40.     But the processing speed of iPhones should not normally diminish as a function of battery capacity. As Poole observed, "While we expect battery capacity to decrease as batteries age, we expect processor performance to stay the same." On account of Apple's intentional conduct, once the battery condition of Affected iPhones reached a certain state, processing speeds were dramatically slowed.

41.     Apple secretly and without authorization diminished the performance of Plaintiffs' and the Class Members' Affected iPhones and iPads. Apple employs other means of accomplishing this end by delivering software updates that in other ways unjustifiably diminishes the performance of older model iPhones. This course of conduct is unfair, deceptive, in bad faith, and injures Plaintiffs and the other Class Members, and unjustly enriches Apple at their expense.

42.     Only after Poole's publication did Apple admit that it had been developing and introducing code to its customers intended to throttle the processing speed of older versions of iPhones without informing consumers those issues.

43.     On December 20, 2017, Apple finally disclosed that it was and had been purposefully, knowingly and admittedly slowing or throttling down the operating speed of Affected iPhones.

44.     On December 20, 2017, Apple stated the following:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

45.     Apple did not inform Plaintiffs and/or similarly situated individuals that they could improve their Affected Devices' performance by replacing the batteries of said Affected iPhones, as opposed to purchasing a new iPhone or other phone.

46.     Apple knew that replacing the batteries, as opposed to purchasing a new device, would have improved the performances of the Affected Devices owned by Plaintiffs and similarly situated individuals.

47.     Apple knowingly concealed and failed to disclose the fact that a battery replacement would improve the performance of Affected Devices.

48.     Apple concealed and failed to disclose the fact that iOS updates were causing Affected iPhones and iPads to slow or throttle down and not perform effectively.

49.     Replacing batteries for Affected iPhones is less expensive than purchasing new iPhones or devices.

50.     Plaintiffs and Class Members own or have previously owned the Affected Devices during the time Apple released the iOS 10 and iOS 11 Updates.

51.     As a result of the iOS 10 and iOS 11 Updates, Plaintiffs' iPhones operated more slowly, and their functionality was materiality impaired. The iPhones suffered problems with applications freezing, forced rebooting, and delayed response time.

52.     Plaintiffs were unaware of the slowed processing speed caused by the iOS10 and iOS 11 Updates.

53.     Defendant's wrongful actions directly and proximately caused the loss of value to Plaintiffs' and Class Members' iPhones causing them to suffer, and continue to suffer, economic damages and other harm for which they are entitled to compensation, including: the replacement of the Affected Device; compensation for loss of use; compensation for loss of value; and/or the purchase of new (non-defective) batteries.

**Class Action Allegations**

54.     Plaintiffs brings this class action pursuant to Fed. R. Civ. Proc. 23.

55.     The class that Plaintiffs seek to represent is defined as follows: All persons who reside in the State of Missouri who (a) own an Affected iPhone or iPad or (b) owned an Affected iPhone or iPad and replaced it with a new device.

56.     Plaintiffs also seek to represent a subclass that includes each member of the proposed class described above who primarily used their Affected iPhone or iPad for personal, family, or household use as that term is used within the Missouri Merchandise Practices Act ("MMPA").

57.     Excluded from the class are the following:

   a.   Apple, its subsidiaries, affiliates, officers, directors, and employees;

   b.   Plaintiffs in separate, non-class legal actions against Apple based on the conduct alleged herein;

   c.   Counsel, and the immediate families of counsel, who represent plaintiffs in this action; and

   d.   The judge presiding over this action, those working in the judge's chambers and their immediate families.

58.     Plaintiffs are informed and believe that the proposed class comprises thousands of members. While the exact number of Class Members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of Class Members, at least. Class Members are readily identifiable from information and records in Defendants' possession, custody or control.

59.     Apple has acted with respect to Plaintiff and members of the proposed class in a manner generally applicable to each of them. There is are common questions of law and fact involved, which affect all class members. The questions of law and fact common to the class predominate over the questions that may affect individual class members, including the following:

a. whether Apple modified iOS in a manner that slowed the performance of Affected iPhones and iPads;

b. whether the representations Apple has made about the nature and scope of the battery defect are false;

c. whether Apple made false representations about the nature and scope of the battery defect for the purpose of concealing it and avoiding the expense of recalling and replacing the batteries in Affected iPhones and iPads;

d. whether Apple used the iOS modification to inducing Plaintiffs and Class Members to buy a new replacement for their Affected iPhones;

e. whether Apple is subject to liability for concealing material facts from Plaintiff and members of the proposed class;

f. whether Apple is subject to liability for violating the MMPA, the Missouri Computer Tampering Act, or Missouri's prohibition against malicious trespass to personal property;

g. whether compensatory or consequential damages should be awarded to Plaintiffs and members of the proposed class;

h. whether punitive damages should be awarded to Plaintiff and members of the proposed class;

i. whether other, additional relief is appropriate, and what that relief should be.

60. Plaintiffs' claims are typical of the claims of all members of the class they propose to represent in this action. Each Class Member suffered damages from the loss of use and value of the Affected Devices because of the performance slowdowns. The injuries

of the Plaintiff and Class are substantially similar and Plaintiffs' claims for relief are based upon the same legal theories as the claims of other Class Members.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the class, and do not have interests that are antagonistic to or in conflict with those they seek to represent.

62.     Plaintiffs have retained counsel who are experienced in the prosecution of class actions and other forms of complex litigation.

63.     In view of the complexity of the issues and the expense that an individual plaintiff would incur if he or she attempted to obtain relief from a large, multinational corporation such as Apple, the separate claims of individual class members are monetarily insufficient to support separate actions. Because of the size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of in this Complaint.

64.     The class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent a class action, class members will continue to suffer losses, Apple's violations of law will be allowed to proceed without a full, fair, judicially supervised remedy, and Apple will retain sums received as a result of its wrongdoing. A class action will provide a fair and efficient method for adjudicating this controversy.

65.     The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications with respect to thousands of individual class members, which would, as a practical matter, dispose of the interests of the

class members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

66.     The proposed class satisfies the certification criteria of Federal Rule of Civil Procedure 23.

**Claims for Relief**

**COUNT I**
**Violation of Missouri Merchandising Practices Act ("MMPA")**

67.     Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

68.     The MMPA prohibits unfair methods of competition and unfair or deceptive acts or practices.

69.     Apple's conduct, described above, in purposefully slowing the speed and performance of Affected iPhones and iPads, was unfair and deceptive. Apple unilaterally slowed performance of Plaintiffs' and the other Class Members' Affected iPhones and iPads without warning, notice, or the ability to opt out.

70.     When Apple provided the software update with the inhibitory software, it omitted this material fact from Plaintiff and the other Class Members.

71.     Apple's omission was material and deceptive. Reasonable consumers consider the processor speed of their iPhones to be a material aspect of their decision whether to buy a smartphone.

72.     Apple's conduct was also an unfair practice that injured Plaintiff and the other Class Members.

73.     Plaintiffs purchased their Affected iPhones and iPad from Apple primarily for personal use.

74.    Apple's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiffs and similarly situated individuals.

75.    As a result of Apple's conduct, Plaintiffs and similarly situated individuals have incurred and will continue to incur legal expenses and attorneys' fees related to the prosecution of this action.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a. Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered,

b. Awarding Plaintiffs, individually and on behalf of similarly situated individuals punitive damages in an amount sufficient to deter Apple and others from such conduct in the future, and

c. Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, reasonable attorneys' fees, expenses and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT II
## Trespass to Chattels

76.     Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

77.     Apple's conduct described above, in purposefully slowing the speed and performance of Affected iPhones and iPads, constitutes a trespass to chattels.

78.     Apple purposefully installed software or a computer program intended to hamper the speed and performance of Plaintiffs' and the other Class Members' Affected iPhones and iPads.

79.     Apple's conduct in slowing the speed and performance of Affected iPhones and iPads was without consent or exceeded the consent given by Plaintiffs and the other Class members.

80.     Plaintiffs and the other Class members suffered damage as a result of Apple's trespass. Their Affected phones' processing speed has been significantly reduced, apps and programs perform poorly.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a.  Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered,

b.  Awarding Plaintiffs, individually and on behalf of similarly situated individuals punitive damages in an amount sufficient to deter Apple and others from such conduct in the future, and

c. Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

**Count III**
**Violation of Missouri's Prohibition Against Malicious Trespass to Personalty**

81.     Plaintiffs incorporates herein by reference the allegations contained above as if fully set forth herein.

82.     Apple's conduct described above constitutes a malicious or wanton damage to Plaintiffs' and the Class Members' personal property, goods, and chattels under Mo. Rev. Stat. § 537.330.

83.     As a result of Apple's malicious or wanton conduct, Plaintiffs and the Class Members are entitled to double the value of their Affected iPhones or iPads.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a. Awarding Plaintiffs, individually and on behalf of similarly situated individuals, for double the value of their Affected iPhones or iPads, and

b. Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

## Count IV
## Violation of Missouri's Computer Tampering Law

84.    Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

85.    As described above, Apple knowing and without authorization, or reasonable grounds to believe it had authorization, modified programs existing internal to the computer system on Plaintiffs' Affected iPhones and iPads.

86.    Alternatively, Apple knowing and without authorization, or reasonable grounds to believe it had authorization, modified or damaged the equipment used in the computer system on Plaintiffs' Affected iPhones and iPads.

87.    Accordingly, Apple's conduct violated Sections 569.095 and 569.097 of the Revised Missouri Statutes.

88.    As a result of Apple's above-described conduct, Plaintiffs and the Class Members were damaged.

89.    Section 537.525 of the Revised Missouri Statutes affords Plaintiffs and the Class Members a civil cause of action to remedy violations of §§ 569.095, .097, including the recovery of compensatory damages and reasonable attorney's fees.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a.    Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered,

b.   Awarding Plaintiffs, individually and on behalf of similarly situated individuals punitive damages in an amount sufficient to deter Apple and others from such conduct in the future, and

c.   Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, reasonable attorneys' fees, expenses and for such other and further relief as the Court may deem just and proper under the circumstances.

**Count V**
**Breach of the Covenant of Good Faith and Fair Dealing**

90.   Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

91.   Plaintiffs and the other Class members and Apple entered into contracts.

92.   Plaintiffs and the other Class members have fully performed their obligations under the contracts.

93.   Under Missouri law a covenant of good faith and fair dealing is implied into every contract.

94.   Apple breached the covenant of good faith and fair dealing by engaging in the above described conduct, purposefully slowing the speed and performance of Class Members' Affected iPhones and iPads.

95.   Apple's conduct was willful and intentional and committed with a purpose of slowing down Affected iPhones and iPads to induce Plaintiffs and the other Class members to buy new devices. Apple's conduct was unfair, deceptive, and in bad faith. It gave iPhone and iPad users no notice and left them with no reasonable alternatives.

96.     Plaintiffs and the other Class Members suffered damage as a result of Apple's breach of the covenant of good faith and fair dealing. Their phones' processing speed has been significantly reduced, apps and programs perform poorly. Plaintiffs and the other Class Members have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a.   Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered, and

b.   Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

### Count VI
### Breach of Implied Warranty of Merchantability

97.     Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

98.     Apple sold Affected iPhones and iPads to Plaintiffs and the Class Members.

99.     When Apple sold Affected iPhones and iPads to Plaintiffs and the Class Members the Affected iPhones and iPads were not fit for their ordinary purpose in that the Affected iPhones and iPads had inadequate batteries and Apple slowed down and their performance through iOS updates.

100.     Apple was notified that the Affected iPhones and iPads were not being fit for their ordinary purpose.

101.     Because the Affected iPhones and iPads were unfit for their ordinary purpose, Plaintiffs and the other Class Members have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

    a.   Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered, and

    b.   Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

**Count VII**
**Breach of Implied Warranty of Fitness for a Particular Purpose**

102.     Plaintiffs incorporate herein by reference the allegations contained above as if fully set forth herein.

103.     Apple sold Affected iPhones and iPads to Plaintiffs and the Class Members.

104.     Apple knew or should have known at the time it sold the Affected iPhones and iPads to Plaintiffs and the Class Members that the subject device was intended to be used as a fully functioning smartphone or tablet.

105.    Apple knew or should have known at the time it sold the Affected iPhones and iPads to Plaintiffs and the Class Members that they would rely upon Apple's experience and/or representations in selecting for purchase the Affected iPhones and iPads.

106.    Plaintiffs and the Class Members reasonably relied on Apple's experience and/or representations in purchasing the Affected iPhones and iPads.

66.    When Apple sold the Affected iPhones and iPads to Plaintiffs and the Class Members, the Affected iPhones and iPads were not fit for their ordinary purpose in that the Affected iPhones and iPads had inadequate batteries, they were purposefully being slowed down, and iOS was not fit for the particular purpose for which the Affected iPhones and iPads were sold.

107.    Because the Affected iPhones and iPads were unfit for the particular purpose for which they were sold, Plaintiff and the other Class Members have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated individuals prays this Court enter judgment in its favor and against Apple as follows:

a.    Awarding an amount to be determined at trial that will fairly compensate Plaintiffs, individually and on behalf of similarly situated individuals, for the harms they have suffered, and

b.    Awarding Plaintiffs, individually and on behalf of similarly situated individuals, their costs incurred herein, post-judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 28, 2017                    **LEAR WERTS LLP**

                                            Respectfully submitted,


                                            /s/Todd C. Werts
                                            Bradford B. Lear, MO53204
                                            Todd C. Werts, MO53288
                                            2003 W. Broadway, Ste. 107
                                            Columbia, MO 65203
                                            Telephone: 573-875-1991
                                            Facsimile: 573-875-1985
                                            Email: lear@learwerts.com
                                            Email: werts@learwerts.com
                                            Email: sowers@learwerts.com